IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| Timothy Cosman, <br><br> Appellant, <br><br> v. <br><br> Busey Bank <br><br> Appellee. | Case No. 3:20-cv-50298 <br><br> Honorable Iain D. Johnston |

**MEMORANDUM OPINION AND ORDER**

Timothy Cosman appeals the Bankruptcy Court's decision to grant Busey Bank's ("the Bank") motion for summary judgment as to count II of its adversarial complaint. That count sought a declaration that Cosman debts to Busey Bank are nondischargeable because he induced the Bank into issuing him the loans by filing false financial documents and that the Bank reasonably relied on those falsehoods. The Court affirms the Bankruptcy Court's decision.

I.   Background

Between 2014 and 2015, Cosman obtained several loans from Busey Bank.[1] These loans, including refinances and renewals, totaled millions of dollars. As part of these transactions, Cosman filed financial statements claiming that he owned twenty percent of Cosman Farms, LLC, which he claimed was valued at $2,000,000; twenty percent of Cosman Family Limited Partnership, which he claimed was

---

[1] The facts are taken entirely from the record presented on appeal, including the affidavits, and Cosman's response to Busey Bank's statement of material facts.

1

valued at $1,000,000; and an itemized list of farming machinery, equipment, and vehicles, which he either overvalued or did not own. In March 2015, he filed another financing statement claiming the same, but with a slight increase in the claimed value of the two businesses.

Cosman then defaulted on the Busey Bank loans and, in June 2016, sought relief under chapter 7 of the Bankruptcy Code. But the financial information Cosman used to obtain those loans was fraudulent. In October 2019, Cosman pleaded guilty and was convicted of bank fraud because of his use of fraudulent information to obtain the Busey Bank loans. The Bank then filed a four-count adversarial complaint in the Bankruptcy Court seeking to declare the loans nondischargeable under 11 U.S.C. § 523(a)(2)(A)–(B), (a)(4), and (a)(6). Count II asked the Court to declare the loans nondischargeable under § 523(a)(2)(B). The Bankruptcy Court granted the Bank's motion as to that count and dismissed the rest. Cosman now appeals. The question on appeal is whether the Bankruptcy Court erred in granting summary judgment to the Bank under § 523(a)(2)(B) when it found no genuine issue of material fact regarding the Bank's reliance on Cosman's fraudulent financial statements.

**II.   Analysis**

The Court reviews the Bankruptcy Court's determinations of law *de novo*, and its factual findings for clear error. *U.S. Bank N.A. v. Vill. at Lakeridge, LLC*, 138 S. Ct. 960, 966 (2018) (noting, in a bankruptcy case, that legal conclusions are reviewed *de novo*); *Estate of Cora v. Jarling* (*In re Jarling*), 816 F.3d 921, 924 (7th

Cir. 2016); *Shaw Steel, Inc. v. Morris* (*In re Morris*), 223 F.3d 548, 552 (7th Cir. 2000); Fed. R. Civ. P. 52(a)(6); Fed R. Bankr. P. 7052. Summary judgment is appropriate when no genuine dispute of material fact exists, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden to show that no genuine dispute of material fact exists. *Id.* Then, the nonmovant must present its own evidence showing that a genuine dispute of material fact does exist. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).

The Court will not engage in a trial on affidavits. *Id.* at 255 ("The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor."). But affidavits or declarations based on personal knowledge may be used to support a motion for summary judgment. Fed. R. Civ. P. 56(c)(4). If the nonmovant fails to properly address the movant's assertions of fact, the Court may consider the assertions undisputed and grant the motion if these undisputed facts entitle the movant to judgment as a matter of law. Fed. R. Civ. P. 56(e)(2)–(3).

### A. Reasonable Reliance

In count II of its adversarial complaint, the Bank contended that its loans to Cosman were nondischargeable under 11 U.S.C. § 523(a)(2)(B). It contended Cosman had obtained the loans by using fraudulent financial statements on which the Bank reasonably relied. *In re Cosman*, 616 B.R. 358, 368 (Bankr. N.D. Ill. 2020). That section of the Bankruptcy Code provides that a bankruptcy discharge order does not discharge:

3

> an individual debtor from any debt . . . for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by . . . use of a statement in writing that is (i) materially false; (ii) respecting the debtor's or insider's financial condition; (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit *reasonably relied*; and (iv) that the debtor caused to be made or published with intent to deceive.

11 U.S.C. § 523(a)(2)(B) (emphasis added). To succeed on its motion for summary judgment, the Bank must show that Cosman made a materially false written statement about his financial condition with the intent to deceive, and that the Bank reasonable relied on that written statement. *Fischer Inv. Cap., Inc. v. Cohen* (*In re Cohen*), 507 F.3d 610, 613 (7th Cir. 2007). The Bankruptcy Court granted the Bank's motion for summary judgment on count II. Cosman's appeal challenges only the Bankruptcy Court's determination that the Bank reasonably relied on his fraudulent financial statements. No other element is at issue. Dkt. 14, at 5.

Section 523 employs two different types of reliance: reasonable and justified. Justifiable reliance requires a lesser showing than reasonable reliance. *Lamar, Archer & Cofrin, LLP v. Appling*, 138 S. Ct. 1752, 1763 n.6 (2018). Section 523(a)(2)'s text "plainly heightens the bar to discharge when the fraud at issue was effectuated" through a written financial statement. *Id.* at 1763. "Under the justifiable reliance standard, a creditor has no duty to investigate unless the falsity of the representation would have been readily apparent." *Ojeda v. Goldberg*, 599 F.3d 712, 717 (7th Cir. 2010). This presents a subjective inquiry into the "circumstances of a particular case and the characteristics of a particular plaintiff." *Id.*

In contrast, the reasonable reliance test is objective. Although it is assessed on a case-by-case basis, *In re Bonnett*, 895 F.2d 1155, 1157 (7th Cir. 1989), it does not involve an subjective inquiry into the creditors lending policies and practices, *In re Garman*, 643 F.2d 1252, 1256 (7th Cir. 1980). Furthermore, courts do not second guess the creditor's lending decisions. *In re Morris*, 223 F.3d at 553. Instead, federal courts determine whether the creditor's reliance on the debtor's fraudulent financial statement was reasonable under the circumstances. *Field v. Mans*, 516 U.S. 59, 63 (1995) (defining reasonable reliance as "what would be reasonable for a prudent man to do under those circumstances"). Although creditors are not generally required to conduct investigations into every potential agreement, *In re Morris*, 223 F.3d at 554, they cannot blindly ignore evidence of deceit, that to a reasonably prudent creditor, would throw up a red flag. *In re Bonnett*, 895 F.2d at 1157; *accord Veritex Cmty. Bank v. Osborne* (*In re Osborne*), 951 F.3d 691, 699 (5th Cir. 2020). But even though reasonable reliance is a heightened burdened for creditors, it "cannot be said to be a rigorous requirement, but rather is directed at creditors acting in bad faith." *In re Morris*, 223 F.3d at 553 (quoting *Bank One, Lexington, N.A. v. Woolum*, 979 F.2d 71, 76 (6th Cir. 1992)).

Here, the Bankruptcy Court analyzed the affidavits and the lending agreements and found that "[t]here is nothing on the face of the financial statements that would have alerted the Bank that the debtor was misrepresenting his financial condition or that there was a need for further investigation." *In re Cosman*, 616 B.R. at 370–71. The Bankruptcy Court analyzed the evidence and

determined that no red flags existed. With no red flags, reasonable reliance did not require the Bank to investigate further. Cosman contends that this was error.

Cosman cites to *Waugh Real Estate Holdings, LLC v. Daecharkhom* (*In re Daecharkhom*), 481 B.R. 641 (Bankr. D. Nev. 2012). Dkt. 14, at 9. But that case is not persuasive. First, it is a case from a Ninth Circuit district court. *See Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) (district court decisions are not precedential). Second, and most important, that case seems to suggest that justifiable reliance and reasonable reliance require the same analysis and that reasonable reliance requires a subjective inquiry. *Id.* at 648–49 (noting in the opening statement that the plaintiff must prove "that the reliance was reasonable or justifiable (elements 5 or 6)" and then explaining that the Court "must particularly consider the subjective effect of those circumstances upon the creditor"). At least in this Circuit, that is simply not true. The Seventh Circuit has been clear that the reasonable reliance test is objective: it asks whether the reasonably prudent lender would have relied on the debtor's false statements. *In re Morris*, 223 F.3d at 553. Thus, a subjective inquiry into the thoughts of the loan officer that approved the loans is not enough to satisfy this objective reasonable person standard.

Relying on *Hurston v. Anzo* (*In re Anzo*), 562 B.R. 819 (Bankr. N.D. Ga. 2016), Cosman contends that his fraudulent statements regarding his interests in Cosman LLC and Cosman Family Limited Partnership should have been a red flag and, therefore, the Bank could not have reasonably relied on those statements without further investigation. Dkt. 14, at 12. But citation to *In re Anzo* is not

6

persuasive. First, that case comes from a district court in Georgia, and is not binding on this Court. *Camreta*, 563 U.S. at 709 n.7. Second, the *In re Anzo* facts occurred in the middle of the "deep recession" of 2008 and 2009. *In re Anzo*, 562 B.R. at 833. Unlike here, that case also presented multiple red flags that should have prompted further inquiry. *Id.* at 834. At bottom, that case says nothing about false financial statements that include ownership in family businesses in a significantly different economic environment.

In this case, the Bank presented an affidavit of Steven Henderson, Senior Vice President and Manager of Special Assets, the department to which Cosman's loans were transferred. Henderson, having reviewed the internal business records, stated that the Bank relied on the false statements offered by Cosman.[2] And the Bankruptcy Court reviewed the financial statements and determined that nothing would have alerted the reasonably prudent lender to any need for further investigation.

Cosman argues that Henderson's testimony regarding the Bank's reliance on Cosman's false financial statements is conclusory and without factual foundation. Dkt. 14, at 9. Though Cosman fails to cite any authority to support this proposition, he is correct that merely conclusory affidavits would not be enough. *Wheatley v. Factory Card & Party Outlet*, 826 F.3d 412, 419 (7th Cir. 2016) ("Wheatley's affidavit contains conclusory statements that she could perform the job with the

---

[2] Henderson's affidavits are located in this Court's docket at Dkt. 8-3, at 12–21 (hereinafter "Henderson First Affidavit"); Dkt. 8-4, at 151–53 (hereinafter "Henderson Second Affidavit").

medical boot, but the facts regarding her abilities when wearing the boot do not support that conclusion."). But Henderson's affidavits are not merely conclusory. His first affidavit includes more than eight pages of factual details concerning the history of the Cosman account, the security interests the Bank took in support of the loans, and that the Bank would not have loaned the monies to Cosman had it known of his falsehoods. *See* Henderson First Affidavit. That is enough to establish a factual foundation for Henderson's testimony.

Cosman also points to Henderson's affidavit statement regarding reliance on the fraudulent statement that Cosman "was the beneficiary of a 'promissory note to be owed to the defendant in the amount of $1,500,000 executed by the defendant's father'"—the "defendant" being Cosman. Henderson First Affidavit, ¶ 19. He argues that this statement should have been a red flag, but he cites no authority that shows such a loan to be a red flag. Dkt. 14, at 10. On the contrary, the loan is not a red flag. Cosman is involved in a family business that, at least at one time, dealt in the millions of dollars. A creditor's failure to see a $1,500,000 financial transaction under these circumstances remains well within the range of objective reasonableness.

Without any red flag, or any indication that the Bank should have investigated further, the Bank's reliance was objective reasonable, and the Bankruptcy Court was correct to grant the Bank's motion for summary judgment on Count II.[3]

---

[3] Cosman contends that the Bank has the burden of persuasion and proof and that he should have the opportunity to cross-examine Henderson and subpoena other witnesses.

**B. The Affidavits**

In support of its position, the Bank filed two affidavits of Steven Henderson, Senior Vice President and Special Assets Manager of Busey Bank. Cosman also filed his own affidavit. Dkt. 8-4, at 118–19 (hereinafter "Cosman Affidavit").

Though not well developed, Cosman's opening brief seems to argue that a genuine issue of material fact exists because Rule 56 "does not authorize trial on affidavits." Dkt. 14, at 7. Later in his brief, Cosman argues that he "did counter the affidavit of Henderson with his own affidavit." *Id.* at 8. In his reply brief, Cosman further argues that Henderson's affidavits have no foundation and should carry "very little weight." Dkt. 17, at 5–6. He further contends that the issue at hand is a factual one and should not be decided on the affidavits. *Id.* at 6.

To begin, the assertion that Henderson's affidavit should carry "very little weight" assumes that the Court weighs evidence on a motion for summary judgment. That would amount to exactly the type of trial on the affidavits that Cosman correctly explains is not permitted at this stage. A federal court's "job when assessing a summary judgment motion is not to weigh evidence, make credibility determinations, resolve factual disputes and swearing contests, or decide which

---

Dkt. 17, at 6. But this is the summary judgment stage. As the Seventh Circuit has put it, this is the time to "put up or shut up." *E.g.*, *Goodman v. NSA, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010) ("We often call summary judgment, the 'put up or shut up' moment in litigation, by which we mean that the non-moving party is required to marshal and present the court with the evidence she contends will prove her case. And by evidence, we mean evidence on which a reasonable jury could rely."); *see also BMO Harris Bank, N.A. v. Vista Mktg. Grp. (In re Vist Mktg. Grp.)*, 548 B.R. 502, 514 (Bankr. N.D. Ill. 2016). Moreover, Cosman had the opportunity to cross-examine Henderson if he deposed him. He eschewed that opportunity, and so now cannot bellyache about Henderson's un-cross-examined affidavits.

9

inferences to draw from the facts." *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). At bottom, Henderson's affidavit is sufficient for summary judgment purposes if it meets the criteria set out in Fed. R. Civ. P. 56(c)(4); that it is "made on personal knowledge, set[s] out facts that would be admissible in evidence, and show[s] that the affiant or declarant is competent to testify on the matters stated."

Henderson's affidavits meet these requirements. The affidavits explain that Henderson reviewed the business records relevant to the Cosman loans. Henderson First Affidavit, ¶ 1. They explain that Henderson had access to all of those business records because he was responsible for managing the loans. *Id.* ¶ 2. But because Henderson was not involved in the decision to issue the loans, he has no personal knowledge of that process. Instead, the personal knowledge supporting his testimony is limited to his review of the business records associated with the Cosman account. So, he can speak only to the content of those records and not the subjective mindset of those directly involved in the loan offer itself. The other two requirements are also met. Cosman does not challenge the eventual admissibility of the business records that support Henderson's testimony, nor does he challenge Henderson's competency to testify. Dkt. 17, at 5. Thus, the Henderson affidavits are sufficient under Rule 56(c)(4) for the purpose of describing what the Bank's business records show.

Although Cosman did file his own affidavit, he has not shown that the facts set out in Henderson's testimony are in dispute. Henderson's affidavits reflect his review of the Bank's loans to Cosman. They, along with the financial statements,

establish that the Bank reasonably relied on Cosman's false financial statements—an objective test. Henderson First Affidavit, ¶¶ 3, 33–34; Henderson Second Affidavit, ¶ 12. And Cosman's affidavit does not purport to counter that. Cosman's affidavit asserts that Jeffrey Rohlwing was his primary loan officer, and that Cosman had no dealings with Henderson until after he defaulted on his loan obligations to the Bank. Cosman Affidavit, ¶ 3. He also notes that Mr. Rohlwing did not request any additional information from him or share the results of any appraisals, *id.* ¶ 4, which he was not required to do. The Bank, however, has not challenged those factual assertions, and the assertions do nothing to counter any of the assertions in Henderson's affidavit because the Court is not required to perform a subjective inquiry.

In *Posey v. Skyline Corp.*, the Seventh Circuit found no genuine dispute of material fact in an employment discrimination case when the defendant company filed affidavits asserting that it had conspicuously posted the required notice in the lunchroom. 702 F.2d 102, 105 (7th Cir. 1983). Posey responded with his own affidavit contending that he glanced at the posters on the lunchroom bulletin board almost every day and could not recall ever seeing such a notice. *Id.* But the Seventh Circuit determined that Posey's affidavit was insufficient to create question of fact: "Posey's affidavit merely indicates that Posey never saw the ADEA notice, which is not the same as an averment that the notice was not in fact conspicuously posted." *Id.* at 105–06. Although some Seventh Circuit judges have questioned that decision, it remains binding precedent. *See id.* at 106–07 (Cudahy, J., dissenting);

11

*Unterreriner v. Volkswagen of Am., Inc.*, 8 F.3d 1206, 1213–14 (7th Cir. 1993) (Rovner, J., dissenting).

Here, Cosman's affidavit provides even less than the counter affidavit in *Posey*. Posey's affidavit actually contended that the company had not posted the required notice. Conversely, Cosman's affidavit merely asserts that the Bank's affiant was not his loan officer. It does not assert that the content of Henderson's affidavit is wrong. Thus, Cosman's contention that his affidavit creates a question of fact cannot stand in light of *Posey*. Taking Henderson's affidavits and Cosman's affidavits as true, Busey Bank is still entitled to judgment as a matter of law. At bottom, Cosman's insistence that Henderson was not involved in the loan-making process would only be relevant if the reasonable reliance test was subjective rather than objective. But it is not. As explained above, it is circumstantial evidence of actual reliance and determines whether the Bank's conduct conforms to a reasonably prudent lender standard. Thus, the fact that Henderson was not involved in the loan-making process is irrelevant.

Cosman next argues that Henderson's affidavit shows that the Bank "justifiably," as opposed to "reasonably," relied on Cosman's false financial statements. He seems to argue that the Bankruptcy Court should have accepted this reference as a judicial admission. Dkt. 14, at 7. Curiously, Cosman then contends that the Bankruptcy Court inappropriately substituted or corrected Henderson's *factual* statements made under oath. *Id.* at 8. But whether the Bank justifiably or reasonably relied on Cosman's false financial statement is a legal

conclusion. And the Bankruptcy Court was correct not to accept Henderson's legal conclusion, if that is what he meant to assert. *Pfeil v. Rogers*, 757 F.2d 850, 862 (7th Cir. 1985) ("Because legal argumentation is an expression of legal opinion and is not a recitation of a 'fact' to which an affiant is competent to testify, legal argument in an affidavit may be disregarded.").

### III. Conclusion

For the reasons explained above, the Court affirms the Bankruptcy Court's decision granting summary judgment on Count II in favor of Busey Bank. The Bank reasonably relied on Cosman's false written financial statements, and his debts to Busey Bank are, therefore, nondischargeable under 11 U.S.C. § 523(a)(2)(B).

Date: May 12, 2021

_____
Honorable Iain D. Johnston
United States District Judge
Northern District of Illinois
Western Division